**claims resource management, inc.**

California License No. 2835861
Nevada License No. 10860

P.O. Box 250
33345 Santiago Rd.
Acton, California 93510
Telephone: (661) 265-6400
Fax: (661) 265-6450
www.crmi.com
Erika Floyd
Direct Line: (661) 265-6436
E-mail: erika@crmi.com

August 29, 2019

VIA CERTIFIED MAIL/RETURN RECEIPT REQUESTED
RETURN RECEIPT NO. 92148969009997901415717504

Adams Residential Contracting, Inc.
9616 Roosevelt Way NE
Seattle, Washington 98115

Attn: Kevin Adams

| | |
|---|---|
| Insurer: | Developers Surety and Indemnity Company |
| Insured: | Adams Residential Contracting, Inc. ("Adams Residential") |
| Policy: | BIS00019250-03 |
| Plaintiff: | City of Seattle |
| Our File No: | 47122 |

Dear Mr. Adams:

Claims Resource Management, Inc. is the third party claims administrator for Developers Surety and Indemnity Company ("DSI") for the above Policy. We are writing to you as the principal of Adams Residential. If this letter should be sent somewhere else, please contact us immediately.

DSI has retained Scott Clements to represent Adams Residential in this case. Defense counsel's contact information is:

W. Scott Clement
Clement & Drotz, PLLC
100 W. Harrison Street., Suite –350
Seattle, Washington 98119
Telephone No: (206) 448-9595
Fax No: (206) 448-2235
E-mail: sclement@clementdrotz.com

## I. Background

DSI recites to certain information gained in its investigation of this Claim for purposes of setting forth its coverage position. DSI recitation of facts is not meant to be exhaustive nor is it meant to take any position as to the truth or falsity of the known facts.

**claims resource management of nevada, inc.**

claims resource management, inc.

Adams Residential Contracting, Inc.
August 29, 2019
Our File: 47122
Page 2

DSI received notice of this Claim from Adams Residential's agent who provided a copy of the lawsuit which Adams Residential was served with on August 19, 2019. The City of Seattle filed a lawsuit against Adams Residential and McDowell Northwest Pile King, Inc. ("McDowell"). The City is seeking damages excess of $1 million, and its attorney fees/costs, for the sewer repairs for the damage allegedly caused during construction at 3503 4th Avenue NE. The City alleges it discovered in July 2017 two or more pipe piles going through the City's sewer main pipeline. According to the complaint, Adams Residential applied for a permit for this project on June 21, 2016 and "initiated" a Washington One Call on August 11, 2016. The City purports to have "responded to the One Call by providing best available records regarding identified but unlocatable drainage and wastewater sewer main pipelines going through the property." The City further alleges Adams Residential subcontracted McDowell to provide/install the pipe piles and McDowell's work was completed by September 13, 2016. The City alleges that McDowell dropped pipe piles through the drainage and wastewater main pipelines. The City alleges that McDowell failed to request a locate prior to its work and that Adams Residential "either failed to communicate the information provided by [the City] to McDowell or failed to appropriately supervise the job as the general contractor."

The documentation you provided includes a July 26, 2017 letter from the City to Adams Residential advising of the damaged sewer main, the August 11, 2016 Washington One Call ticket, and a copy of McDowell's September 13, 2016 invoice.

      II.      **Policy and Issues of Coverage**

DSI issued Commercial General Liability Policy BIS00019250-03 to Adams Residential in effect from June 19, 2016 through June 19, 2017. The Policy provides limits of liability of $1,000,000 for each occurrence, $2,000,000 in the general aggregate, $2,000,000 in the products-completed operations aggregate, and is subject to a $1,000 property damage deductible per "occurrence."

The Insuring Agreement is outlined on **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, CG 00 01 04 13**, which state in pertinent part . . .

      1.      **Insuring Agreement**

            **a.**      We will pay those sums that the insured becomes legally obligated to page as damages because of "bodily injury" or "property damage" to which this insurance applies.

        . . .

**claims resource management, inc.**

Adams Residential Contracting, Inc.
August 29, 2019
Our File: 47122
Page 3

> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
>> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>>
>> **(2)** The "bodily injury" or "property damage" occurs during the policy period;

The Insuring Agreement is also amended by **INSURING AGREEMENT AMENDMENT - USE OF EXTRINSIC EVIDENCE - DUTY TO DEFEND OR INDEMNIFY, ID 00 47 01 14**, which states in pertinent part . . .

> We may look to extrinsic evidence outside of the allegations and/or facts pleaded by any claimant to determine whether we owe a duty to defend or indemnify against a "suit" seeking "bodily injury", "property damage", . . . We may rely on extrinsic evidence to deny the defense and/or indemnity of a "suit".

The **CG 00 01 04 13** form also includes **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** which states in pertinent part . . .

> **2.** **Duties In The Event Of Occurrence, Offense, Claim Or Suit**
>
> . . .
>
>> **b.** If a claim is made or "suit" is brought against any insured, you must:
>>
>>> **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
>>>
>>> **(2)** Notify us as soon as practicable.
>>
>> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**claims resource management, inc.**

Adams Residential Contracting, Inc.
August 29, 2019
Our File: 47122
Page 4

    **c.**    You and any other involved insured must:

        **(1)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)**    Authorize us to obtain records and other information;

        **(3)**    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        **(4)**    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

The Policy includes **ADDITIONAL CONDITIONS ENDORSEMENT, ID 00 06 01 14**, which states in pertinent part . . .

    The following conditions precedent to coverage are added to and form part of the policy:

    1.    You much be named an additional insured on the commercial general liability policy of each contractor and subcontractor that performs work on your behalf throughout the time of each such contractor's and subcontractor's performance, and each such policy must provide defense as well as indemnity to you as an additional insured.

    2.    You must obtain a certificate of insurance from each contractor and subcontractor that performs work on your behalf prior to the commencement of each such contractor's and subcontractor's work indicating that each such contractor and subcontractor has a commercial general liability policy in effect.

claims resource management, inc.

Adams Residential Contracting, Inc.
August 29, 2019
Our File: 47122
Page 5

    3.    Both the policy within which you are named as an additional insured and the certificate of insurance you obtain must have each occurrence, general aggregate and product-completed operations aggregate limits, including sublimits, in an amount equal to or greater than this policy.

    4.    You must obtain a hold harmless agreement from each of your contractors and subcontractors, indemnifying you against all loss in any way related to work performed on your behalf by each such contractor and subcontractor.

The Policy includes **EXCLUSION OF CONSTRUCTION MANAGEMENT AND CONSULTING, ID 00 33 08 09**, which states in pertinent part . . .

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> This insurance does not apply to "bodily injury" or "property damage" arising out of or resulting from any insured acting as or in the capacity of a "construction manager" or "construction consultant".
>
> For purposes of this exclusion, "construction manager" or "construction consultant" means any person or entity undertaking to manage, consult on, advise on, or control construction planning, activities or work except as a "general contractor".
>
> For purposes of this endorsement, "general contractor" means a contractor, not affiliated with the owner, having a written contract with the owner, and is required in return for monetary compensation by the owner: to supply all labor and material to complete one or more projects using its own employees, material suppliers or subcontractors; to pay for all labor, subcontractors and materials from the general contractor's own funds in the ordinary course of its business in pursuit of profit; to invoice the owner to cover payouts to employees, subcontractors and suppliers as each project progresses; and to have direct written contracts or purchase orders with its subcontractors and suppliers.

The Policy includes **EXCLUSION-NON-COMPLIANCE WITH BUILDING CODES, ID 00 28 08 09**, which states in pertinent part . . .

**claims resource management, inc.**

Adams Residential Contracting, Inc.
August 29, 2019
Our File: 47122
Page 6

> This insurance does not apply to:
>
> "Bodily injury", "property damage" . . . arising out of, caused by, or attributable to, whether in whole or in part, the design, construction, fabrication, maintenance or repair, including remodeling, of any structure in a manner not in compliance with the controlling building code. This exclusion applies notwithstanding any ecological or resource-efficient benefits that might result from such design, construction, fabrication, maintenance or repair.

The **CG 00 01 04 13** form also includes **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B** which states in pertinent part . . .

> 1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
>
> . . .
>
> e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

The **CG 00 01 04 13** form includes **SECTION III - LIMITS OF INSURANCE** which states in pertinent part . . .

> 1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
>
>    a. Insureds;
>
>    b. Claims made or "suits" brought; or
>
>    c. Persons or organizations making claims or bringing "suits".
>
> 2. The General Aggregate Limit is the most we will pay for the sum of:
>
>    a. Medical expenses under Coverage **C**;
>
>    b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "product-completed operations hazard"; and
>
>    c. Damages under Coverage **B**.

**claims resource management, inc.**

Adams Residential Contracting, Inc.
August 29, 2019
Our File: 47122
Page 7

      **3.**      The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

      . . .

      **5.**      Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

            **a.**      Damages under Coverage **A**; and

            **b.**      Medical expenses under Coverage **C**

      because of all "bodily injury" and "property damage" arising out of any one "occurrence".

The Policy includes **WASHINGTON CHANGES - DEFENSE COSTS, IL 01 23 11 13**, which states in pertinent part . . .

      **A.**      The provisions of Paragraph **B.** Are added to all insuring agreements that set forth a duty to defend under:

            **1.**      Section I of the Commercial General Liability, . . . Products/Completed Operations Liability, . . .

      . . .

      Paragraph **B.** also applies to any other provisions in the policy that sets forth a duty to defend.

      **B.**      If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

      The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

claims resource management, inc.

Adams Residential Contracting, Inc.
August 29, 2019
Our File: 47122
Page 8

SECTION V - DEFINITIONS

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . .

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or

**claims resource management, inc.**

Adams Residential Contracting, Inc.
August 29, 2019
Our File: 47122
Page 9

        subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.**  Does not include "bodily injury" or "property damage" arising out of:

    **(1)**  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)**  The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)**  Products or operations for which the classification, listed in the Declarations or in a policy Schedule states that products-completed operations are subject to the General Aggregate Limit.

**17.**  "Property damage" means:

  **a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

claims resource management, inc.

Adams Residential Contracting, Inc.
August 29, 2019
Our File: 47122
Page 10

> For the purposes of this insurance, electronic data is not tangible property.
>
> As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" . . . to which this insurance applies are alleged. "Suit" includes:

> **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
>
> **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

### III. Conclusion

In determining if there is any potential for coverage for Adams Residential, as outlined on **INSURING AGREEMENT AMENDED - USE OF EXTRINSIC EVIDENCE - DUTY TO DEFEND OR INDEMNIFY** which amends the **Insuring Agreement**, DSI is allowed to look at extrinsic evidence when determining if there is any potential for coverage.

In order for there to be coverage this Claim must come within the **Insuring Agreement**. As outlined above, **a.** and **b.** of the **Insuring Agreement** provides that the Policy covers bodily injury and property damage caused by an occurrence during the Policy Period. The Policy does not cover bodily injury or property damage not on account of an occurrence during the Policy Period. The City is not currently making a Claim for bodily injury. The alleged damage appears to constitute property damage caused by an occurrence during the Policy Period. Should it later be determined the alleged damage occurred outside of the Policy Period, coverage will come into question.

Adams Residential's duties under the Policy is outlined on **Duties In The Event Of Occurrence, Offense, Claim Or Suit**. Adams Residential received notice of the City's Claim on July 26, 2017; however, DSI did not receive notice until August 19, 2019. Should Adams Residential's failure to notify DSI of this Claim in July 2017 somehow prejudice DSI's ability to defend Adam's Residential, coverage will come into question. Additionally, we previously requested a copy of the hold-harmless agreement Adams Residential obtained from McDowell and evidence that Adams Residential is an additional insured under McDowell's insurance Policy.

**claims resource management, inc.**

Adams Residential Contracting, Inc.
August 29, 2019
Our File: 47122
Page 11

To date, we have not received the requested documentation. Please provide the documentation as soon as possible.

The **ADDITIONAL CONDITIONS ENDORSEMENT** outlines conditions precedent to coverage which Adams Residential comply with when using subcontractors. Specifically Adams Residential must be named as an additional insured on the subcontractors' Commercial General Liability Policies and Adams Residential must obtain a hold-harmless agreement from the subcontractors. Please provide us with whatever evidence Adams Residential has to show it complied with these conditions. Should it be determined Adams Residential has not complied with the conditions, coverage will come into question.

In addition, the **EXCLUSION OF CONSTRUCTION MANAGEMENT AND CONSULTING** defines the roles of a construction manager, construction consultant, and general contractor. We understand that Adams Residential was the general contractor on this project. Should it later be determined that Adams Residential's role on this project does not come within the definition in this exclusion of a general contractor, coverage may come into question.

The City alleges that McDowell failed to comply with RCW 19.122 and request a locate prior to its work as well as the City alleges Adams Residential failed to provide McDowell with the locate information or failed to properly supervise the job. As outlined on **EXCLUSION - NON-COMPLIANCE WITH BUILDING CODES**, should it be determined that Adams Residential, or its subcontractor McDowell's, work was done not in compliance with the controlling building codes, coverage may come into question.

The City is seeking to recover its attorney fees/costs. As outlined on **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B** should the City be awarded its attorney fees/costs and that award be taxed against Adams Residential, there will be no coverage for the attorney fees/costs.

The City is seeking damages excess of $1 million. The Policy includes a $1 million Each Occurrence limit. As outlined on **SECTION III - LIMITS OF INSURANCE** the Each Occurrence limit is the most that is available under the DSI Policy for this case. To the extent that Adams Residential has excess insurance above the DSI Policy we recommend Adams Residential put its excess carrier on notice of this case.

As outlined on **WASHINGTON CHANGES - DEFENSE COSTS** should it later be determined there is no potential for coverage under the DSI Policy for this Claim DSI reserves the right to withdraw from Adams Residential's defense, upon reasonable notice, and to seek reimbursement from Adam Residential the amount paid in defense costs.

DSI expressly reserves all of its rights, remedies and defenses under the Policy and law, including, but not limited to, the right to commence a declaratory judgment or other coverage action against any or all insureds.

**claims resource management, inc.**

**claims resource management, inc.**

Adams Residential Contracting, Inc.
August 29, 2019
Our File: 47122
Page 12

Furthermore, nothing stated or not stated in this letter is intended to or shall waive any of DSI's rights, remedies or defenses under the Policy or the law, all of which are expressly reserved.

Additionally, if Adams Residential has more information that it believes could impact DSI's coverage position, please send that information to my attention. DSI welcomes Adams Residential's perspective and will consider any information or comments it may offer.

Should you have any questions or concerns regarding this letter, please feel free to contact me.

Very truly yours,

CLAIMS RESOURCE MANAGEMENT, INC.


Erika Floyd
Senior Claims Analyst

EF:hsf

cc:    Monica McCann
       Choice Insurance, LLC
       1715 Market Street, Suite 100
       Kirkland, Washington 98033

Final-P:\wpaug\47122ef0827L.wpd