# claims resource management, inc.

California License No. 2B35861
Nevada License No. 10860

P.O. Box 250
33345 Santiago Rd.
Acton, California 93510
Telephone: (661) 265-6400
Fax: (661) 265-6450
www.crmi.com

December 31, 2019

Erika Floyd
Direct Line: (661) 265-6436
E-mail: erika@crmi.com

CERTIFIED MAIL, RETURN RECEIPT REQUESTED
RETURN RECEIPT NO. 92148969009997901416620582

Mr. Kevin Adams
Adams Residential Contracting, Inc.
9616 Roosevelt Way NE
Seattle, Washington 98115

| | |
|---|---|
| RE: | *City of Seattle v. Adams Residential Construction, et. al.* King County Superior Court Cause No:19-2-21001-0 SEA |
| Insurer: | Developers Surety and Indemnity Company |
| Insured: | Adams Residential Contracting, Inc. ("Adams Residential") |
| Policy: | BIS00019250-03 |
| Plaintiff: | City of Seattle |
| Our File No: | 47122 |

Dear Mr. Adams:

As you are aware, Claims Resource Management, Inc., is the third party claims administrator for Developers Surety and Indemnity Company ("DSI"), which issued Policy No. BIS00019250-03 to Adams Residential Construction, Inc., for the period of June 19, 2016 to June 19, 2017 ("Policy"). We are writing to you as the principal of Adams Residential. If this letter should be sent somewhere else, please contact us immediately.

As set forth in correspondence dated August 29, 2019, based upon the information known at that time, DSI agreed to defend Adams Residential in the suit commonly known as *City of Seattle v. Adams Residential Construction, et. al.,* King County Superior Court Cause No. 19-2-21001-0 SEA, ("Lawsuit"), under a reservation of all rights under the Policy. DSI has been, and will continue to, defend Adams Residential with respect to the Lawsuit, subject to a reservation of all rights under the Policy. Nothing in this correspondence changes or affects the reservation of rights made in the August 29, 2019 correspondence, or in other correspondence.

RELEVANT FACTUAL BACKGROUND

We write to update you on the matter. As you are aware, this matter arises from alleged damage to a City of Seattle sewer line purportedly caused by Adams Residential's work in connection with the remodel of a private residence. Adams Residential submitted a Project Cost Estimate dated August 10, 2016 to homeowners John and Jennesse Stark for the remodel of their residence at 3503 45th Avenue NE, Seattle, Washington, ("Project").

**claims resource management of nevada, inc.**

claims resource management, inc.

Mr. Kevin Adams
December 31, 2019
Our File: 47122
Page 2

The "Residential Construction Contract" for the Project states that Adams Residential will manage the Project, staff the Project as needed, and provide all carpentry and labor for work not performed by trades subcontractors. The Contract states that work is to commence on August 15, 2016 and be completed on or about December 31, 2016.

On July 5, 2016, McDowell NW Pile King, Inc., ("Pile King"), submitted a Bid Confirmation and Agreement, ("Pile King Agreement"), to Adams Residential, to perform work on the Project, specifically, to furnish and install nine piles at the Project.

The Pile King Agreement states that Adams Residential is responsible for any required excavation; locating and removing all obstructions and utilities that interfere with pile operations, including underground utilities and specifies that Pile King is not responsible for any underground utility damage; as well as all engineering, testing lab services and permits, among other items.

The Pile King Agreement identifies liability insurance in the amount of $3 Million; however, no provisions to add Adams Residential as an additional insured under Pile King's liability policy are included. Additionally, the Pile King Agreement included a separate agreement entitled "Underground Utility Agreement" which sets forth that:

The owner or general contractor agrees to locate utilities and lay out pile locations…The owner or general contractor further agrees that in the event any utilities not located by the owner or general contractor are damaged, the owner or general contractor will be responsible for any repair costs and further agrees to indemnify, defend and hold McDowell NW Pile King, Inc., harmless from any and all third party claims against McDowell NW Pile King, Inc.

We understand that Pile King completed its work on or about September 13, 2016, pursuant to the invoice sent to Adams Residential, which states that Pile King provided labor, equipment and material to mobilize and install nine pipe piles.

On July 26, 2017, the City of Seattle, Seattle Public Utilities, ("SPU"), sent notice to Adams Residential that during an inspection of the sewer main adjacent to the location of the Project, SPU discovered that two or more of the supports for the deck pierced a clay sewer main. SPU further stated that the cost of repair will be sent to Adams Residential and/or the homeowners.

It is our understanding based upon the allegations in the Complaint that Adams Residential knew there was a sewer main under the Project, but was unable to find the location prior to Pile King performing its work. Further, based upon information and belief, there was no clear locate performed for the sewer, and that the main was damaged by the pile installation.

On or about August 8, 2019, the City of Seattle, (the "City"), filed suit against Adams Residential and McDowell Northwest Pile King, alleging that both entities caused damage to the City's sewer main pipeline.

claims resource management, inc.

Mr. Kevin Adams
December 31, 2019
Our File: 47122
Page 3

The City alleges that on August 11, 2019, Adams Residential made a Washington One Call regarding the Project and that Seattle Public Works provided records regarding identified but unlocatable drainage and wastewater sewer main pipelines going through the Project. We understand that Adams Residential made no additional effort to locate that drainage and wastewater sewer main pipelines that Adams Residential was informed were located under the Project.

The City alleges that Adams Residential was negligent by failing to properly oversee subcontractors, which failure resulted in damage being caused to the pipeline. Further, the City asserts that Adams Residential was negligent by failing to inform its subcontractor, Pile King, of the existence of identified but unlocatable underground facilities in the area of the Project.

In its answer to the City's complaint, Adams Residential filed a cross-claim against Pile King for breach of contract and contribution. In turn, in its answer to the City's complaint, Pile King filed a cross-claim against Adams Residential for breach of contract, indemnity and contribution.

**THE POLICY**

Developers Surety and Indemnity Company issued a Commercial General Liability Policy, ("Policy"), policy number BIS00019250-03, Policy period June 19, 2016 to June 19, 2017, to Adams Residential Contracting, Inc. The Policy provides Commercial General Liability Coverage in the amount of $1 Million per occurrence, subject to a general aggregate limit of $2 Million, and a products-completed operations aggregate in the amount of $2 Million. As set forth above, nothing herein amends the August 29, 2019 correspondence; DSI reserves all rights under the Policies, including, but not limited to the rights specifically addressed in the August 29, 2019 correspondence.

Relevant here, the Policy provides as follows:

* * *

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM** (Form CG0001 04 13)

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**Insuring Agreement**

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply...

This insurance applies to "bodily injury" and "property damage" only if:

claims resource management, inc.

Mr. Kevin Adams
December 31, 2019
Our File: 47122
Page 4

> The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> The "bodily injury" or "property damage" occurs during the policy period…

The Policy includes numerous endorsements that may be applicable in this matter. This includes te WASHINGTON CHANGES - DEFENSE COSTS Endorsement (Form IL 01 23 11 13) which amends the Policy to allow DSI to seek reimbursement for defense costs incurred for claims which are determined to not be covered under the Policy. Specifically, the Endorsement sets forth, in pertinent part:

> The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:
>
> **1.**    Section **I** of the Commercial General Liability . . .
>
> Products/Completed Operations Liability . . .
>
> ***
>
> Paragraph **B.** also applies to any other provisions in the policy that sets forth a duty to defend.
>
> If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

Further, the Policy includes the ADDITIONAL CONDITIONS ENDORSEMENT (form ID 0060114) which sets forth that certain conditions must be satisfied prior to coverage being triggered under the Policy. The Endorsement states, in pertinent part:

> The following conditions precedent to coverage are added to and form part of the policy:
>
> You must be named an additional insured on the commercial general liability policy of each contractor and subcontractor that performs work on your behalf throughout the time of each such contractor's and subcontractor's performance, and each such policy must provide defense as well as indemnity to you as an additional insured.

**claims resource management, inc.**

Mr. Kevin Adams
December 31, 2019
Our File: 47122
Page 5

        You must obtain a certificate of insurance from each contractor and subcontractor that performs work on your behalf prior to the commencement of each such contractor's and subcontractor's work indicating that each such contractor and subcontractor has a commercial general liability policy in effect.

3.      Both the policy within which you are named as an additional insured and the certificate of insurance you obtain must have each occurrence, general aggregate, and products-completed operations aggregate limits, including sublimits, in an amount equal to or greater than this policy.

4.      You must obtain a hold harmless agreement from each of your contractors and subcontractors, indemnifying you against all loss in any way related to work performed on your behalf by each such contractor and subcontractor.

The Policy also includes the UNDERGROUND UTILITY LOCATION CONDITION Endorsement (form ID 00500114), which bars coverage for any loss that results from operations related to boring or similar underground work where a local locator service did not mark all underground utilities. The Underground Utility Location Condition Endorsement states, in pertinent part:

    **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is hereby amended to add the following:

    **Underground Utility Location**

    It is a condition precedent to coverage that before the insured commences any digging, excavation, boring or similar underground work, a local locator service must come to the job site and mark all underground lines, pipes, cables and underground utilities. The insured must obtain and retain a written record from the locator service. If this is not done, there is no coverage under the policy for any loss, costs or expenses arising out of such operations, and we shall have no duty to defend or indemnify with respect thereto.

**COVERAGE POSITION**

DSI has agreed to defend, has been defending, and will continue to defend, Adams Residential in the Lawsuit, subject to a reservation of all rights under the Policy, at law, and in equity. The coverage position set forth in the August 29, 2019 correspondence, or any other previous correspondence, unless specifically identified as no longer being applicable, is not affected by anything in this correspondence, including but not limited to, the following.

    **The Requirements of the Additional Conditions Endorsement Have Not Been Satisfied To Trigger Coverage Under the Policy.**

As set forth in full above, the Additional Conditions Endorsement identifies certain requirements that must be fulfilled for coverage under the Policy for Adams Residential for the Lawsuit.

Case 2:20-cv-00912-BJR   Document 10-4   Filed 08/27/20   Page 6 of 9

**claims resource management, inc.**

Mr. Kevin Adams
December 31, 2019
Our File: 47122
Page 6

Specifically, the Additional Conditions Endorsement requires, among other things, that Adams Residential be named as an additional insured on the liability policy of each subcontractor that performs work on its behalf, and the policy naming Adams Residential as an additional insured must provide Adams Residential defense as well as indemnity.

Additionally, the Additional Conditions Endorsement requires that Adams Residential obtain a certificate of insurance from each subcontractor that performs work on its behalf, including from Pile King, prior to the subcontractor beginning any work, which certificate must indicate that the subcontractor has a commercial general liability policy in effect.

Further, the Additional Conditions Endorsement necessitates that Adams Residential obtains a hold harmless agreement from any subcontractor working on its behalf, including Pile King, indemnifying Adams Residential against all loss in any way related to work performed on behalf of Adams Residential by the subcontractor.

Based upon the information we have been provided to date, Adams Residential was not named as an additional insured under Pile King's liability policy. As such, the condition precedent for coverage under the Policy, set forth in the Additional Conditions Endorsement, that Adams Residential is named as an additional insured under the liability policy of all subcontractors that perform work on behalf of Adams Residential does not appear to have been satisfied.

Moreover, we understand that Adams Residential did not obtain a certificate of insurance from Pile King indicating that Pile King had a liability policy in effect at the time it performed work on behalf of Adams Residential. Thus, the condition precedent for coverage under the Policy, set forth in the Additional Conditions Endorsement, that Adams Residential obtain a certificate of insurance from all subcontractors performing work on behalf of Adams Residential, evidencing that the subcontractor had liability insurance in effect, prior to commencing any work on the Project, has not been satisfied herein.

We understand that Adams Residential did not obtain a hold harmless agreement from Pile King. Therefore, the condition precedent for coverage under the Policy, set forth in the Additional Conditions Endorsement, that Adams Residential be obtain a hold harmless agreement from any subcontractor working on its behalf has not been satisfied herein.

Based upon the language of the Pile King Agreement, Adams Residential agreed to defend and hold Pile King harmless for any claims relating to any damage to utilities not located by Adams Residential.

As such, it appears that the conditions precedent to coverage under the Policy set forth in the Additional Conditions Endorsement, have not been satisfied by Adams Residential herein. As such, there is no coverage for the Lawsuit under the Policy.

Final-P:\wpdec\47122ef12-31l.wpd

claims resource management, inc.

Mr. Kevin Adams
December 31, 2019
Our File: 47122
Page 7

To the extent that Adams Residential failed to satisfy the conditions precedent set forth in the Additional Conditions Endorsement, which appears to be the case herein, there is no coverage under the Policy for the Lawsuit.

DSI reserves all rights under all terms, including, but not limited to, the requirements in the Additional Conditions Endorsement.

**The Requirements of the Underground Utility Location Condition Endorsement Have Not Been Satisfied To Trigger Coverage Under the Policy.**

The Policy includes the Underground Utility Location Condition Endorsement, which states, among other things, that in order for coverage to be triggered under the Policy, the requirements of the Underground Utility Location Condition Endorsement must be satisfied. The Endorsement is set forth, in full, above.

The Underground Utility Location Condition Endorsement presents several condition precedents to coverage under the Policy; meaning that the requirements identified in the Underground Utility Location Condition Endorsement must be satisfied to trigger coverage under the Policy.

Specifically, prior to any underground work, such as excavation, boring, digging, being performed, Adams Residential must have a local locator service mark all the underground utilities on the location of the work, i.e., the Project. Further, the Underground Utility Location Condition Endorsement requires that Adams Residential get and keep a written record from the locator service that the underground utilities were marked.

The Underground Utility Location Condition Endorsement explicitly states that if a local locator service does not mark all the underground utilities on the Project, and should Adams Residential not obtain and retain a written record of the local locator service's work on the Project, "there is no coverage under the policy for any loss, costs or expenses arising out of such operations, and we shall have no duty to defend or indemnify with respect thereto."

Based upon allegations in the Complaint made by the City, Adams Residential made a Washington One Call, on August 11, 2019, regarding the Project. The City further asserts that Seattle Public Works provided Adams Residential the records regarding identified but unlocatable drainage and wastewater sewer main pipelines going through the Project. We understand that Adams Residential made no additional effort to locate the drainage and wastewater sewer main pipelines that Adams Residential was informed were located under the Project.

Further, Adams Residential has not provided any written records of retaining a local location service and/or that the local location service marked all the underground utilities on the Project.

claims resource management, inc.

Mr. Kevin Adams
December 31, 2019
Our File: 47122
Page 8

To the extent that Adams Residential failed to satisfy the conditions precedent set forth in the Underground Utility Location Condition Endorsement, which appears to be the case herein, there is no coverage under the Policy for the Lawsuit. Further, DSI has no duty to defend Adams Residential in the Lawsuit.

DSI reserves all rights under all terms, including, but not limited to, the requirements in the Underground Utility Location Condition Endorsement.
**DSI Specifically Reserves the Right to Seek Reimbursement of The Defense Fees Incurred in The Defense of Adams Residential.**

The Washington Changes – Defense Costs Endorsement, fully set forth above, amends the Policy to incorporate provisions stating that DSI can seek reimbursement of defense costs incurred should DSI determine that none of the claims for which a defense was provided are covered by the Policy.
Further, the Defense Costs Endorsement provides a right for reimbursement of the costs incurred after Adams Residential was notified, in writing, that there may not be coverage for the Lawsuit and that DSI is reserving its rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

In the instant matter, DSI notified Adams Residential in the reservation of rights dated August 29, 2019, that there may not be coverage under the Policy and that DSI was reserving its right to determine the defense obligations for Adams Residential in the Lawsuit and to seek reimbursement for defense costs.

DSI reiterates its reservation of all rights under the Policy, at law, and in equity; its right to seek a determination of its coverage obligations under the Policy via a declaratory relief action; and to seek reimbursement of the defense fees incurred after August 29, 2019.

Because Developers Surety and Indemnity Company's investigation is ongoing, there may be other Policy terms and conditions that may apply as further facts become known. Developers Surety and Indemnity Company reserves the right to rely on all Policy terms and conditions that may be applicable.

DSI expressly reserves all of its rights, remedies and defenses under the Policy, law, and in equity including, but not limited to, the right to commence a declaratory judgment or other coverage action against any or all insureds. Further, DSI expressly reserves its rights to seek reimbursement of defense costs incurred after August 29, 2019 pursuant to the Washington Changes – Defense Costs Endorsement.

By citing specific Policy language herein, DSI does not waive or relinquish its rights to rely on other Policy terms and conditions. Furthermore, nothing stated or not stated in this letter is intended to or shall waive any of DSI's rights, remedies or defenses under the Policy, the law or equity, all of which are expressly reserved.

**claims resource management, inc.**

Mr. Kevin Adams
December 31, 2019
Our File: 47122
Page 9

Developers Surety and Indemnity Company's coverage position is based upon the information presently available to us. Neither this letter nor Developers Surety and Indemnity Company's investigation is or should be construed as a waiver of any terms, conditions, exclusions or other provisions of the Policy or any other policies of insurance issued by Developers Surety and Indemnity Company. Developers Surety and Indemnity Company expressly reserves all of its rights under the Policy, at law, and in equity, including, but not limited to, the right to assert additional defenses to any claims for coverage; and to modify its coverage position if subsequent information indicates that such action is warranted.

Developers Surety and Indemnity Company further reserves the right to file an action for declaratory relief in order to determine the parties' rights and duties under the Policy. Developers Surety and Indemnity Company reserves the right to seek reimbursement of the defense costs incurred in the defense of Adams Residential in the Lawsuit.

If you have any questions regarding this letter, please do not hesitate to contact us. If you believe that the facts or allegations we have cited are incomplete or incorrect, and wish to provide us to different or additional factual information, please do not hesitate to contact us. If you believe that the coverage positions we have discussed are incorrect, we would be happy to discuss them with you.

If you have any other insurance policies that may respond to this claim, you should notify that carrier immediately.

Very truly yours,

CLAIMS RESOURCE MANAGEMENT, INC.


Erika Floyd
Senior Claims Analyst

EF:hsf

cc:   Monica McCann
      Choice Insurance, LLC
      1715 Market Street, Suite 100
      Kirkland, Washington 98033